## BRIGGS v. BRIGGS.

1. The rule is wise and salutary that requires the Circuit Judge to state
his findings of fact separately; but the appellant having suffered no
prejudice from the judge's failure to state his findings of fact in this
case, there is no ground for a new trial.

2. The Circuit Judge having decreed alimony to the plaintiff upon alle-
gations of adultery, cruelty, and desertion, this court concurred with
the judgment below upon the questions of cruelty and desertion.

3. Is adultery on the part of the husband sufficient ground of itself for
alimony?

4. Cruelty by the husband towards the wife, or the practice by him of
obscene and revolting indecencies in the family circle, is good ground
for a decree of alimony.

5. A cold and formal proposition by the husband to give the wife mere
house room and support, does not condone his past offences; to have
such effect, it should be a cordial overture to her to return to her home
and resume the proper place of a wife.

6. The charge for alimony should be only for the joint lives of husband and wife.

Before COTHRAN, J., York, November, 1884.

This was an action by Mary R. Briggs against her husband, Benjamin F. Briggs, for alimony. The opinion states the case.

*Messrs. Hart & Hart,* for appellant, contended that his first exception was well taken, inasmuch as the Circuit Judge had stated no findings of fact whatsoever, and thus left defendant ignorant of the ground upon which the decree was rested. 2 *McCord Ch.,* 96; 4 *S. C.,* 291. Upon the 2d and 3d exceptions counsel cited 10 *Rich. Eq.,* 176; 1 *McCord Ch.,* 207; *Harp. Eq.,* 144; 4 *Rand.,* 662; 4 *DeSaus.,* 100.

*Messrs. W. P. Good* and *C. E. Spencer,* contra.

March 15, 1886. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This was an action for alimony, brought February 28, 1883, by the plaintiff against her husband, Benj. F. Briggs. The grounds alleged were cruelty, consisting not only of foul and obscene language uttered in presence of the plaintiff, but also of blows directed against her body, making life almost an intolerable burden, adultery with a woman of low character living in his house, and desertion. The defendant answered, stating that the plaintiff had previously brought an action against him for "divorce and alimony" which she had discontinued; that she had, without cause, wilfully abandoned the home provided for her; and that, notwithstanding her many past errors and infirmities of mind and disposition, he has at all times been ready to receive her back under his roof and to support and sustain her, &c.

A special referee was appointed to take the testimony, which was very voluminous, and being all printed in the brief need not be stated here. The Circuit Judge made no separate findings of fact, but adjudged and decreed "that the plaintiff recover of the defendant the sum of two hundred dollars per annum during the time they shall live separate and apart, or until he shall agree to

cohabit with her and treat her as becomes a man to treat his wife, &c. And also that the defendant do pay the costs of this action, to be assessed by the clerk, as well as the sum of two hundred dollars reported by the referee to be a suitable fee for plaintiff's attorney for his services herein."

From this decree the defendant appeals on the grounds: "I. Because no facts are found or decided for or against appellant as the basis of said judgment. II. Because of error in not finding as matter of fact that the desertion was on the part of the plaintiff. III. Because of error in adjudging alimony against defendant until he should consent to take back plaintiff and treat her as a husband ought to treat his wife, he having made such offer *bona fide* in his answer as well as at other times previously, and the said offer having been rejected by plaintiff. IV. Because of error in requiring appellant to cohabit with respondent. V. Because of error in requiring defendant to pay to plaintiff the sum of two hundred dollars per annum during the time they shall live separate and apart or until he shall agree to cohabit with her and treat her as becomes a man to treat his wife. VI. For error in adjudging costs and counsel fees against defendant, it not appearing from any finding of fact that he has been in default. And upon said exceptions the appellant will move the Supreme Court to reverse the judgment and direct that the complaint be dismissed."

Pending the appeal the defendant died and the action was continued, by order, against Joseph F. Wallace as his executor. The sixth exception as to costs and counsel fees was not argued, and we suppose that it is not insisted on.

As to the first exception. We regard the provision of the Code (section 289) which requires that the decision of the court shall contain a statement of the facts and the conclusions of law separately, wise and salutary as tending to prevent confusion and to promote clearness. But it has been held that an omission in that regard is not ground for reversal unless it is made to appear that the appellant has suffered prejudice thereby, as it regards the merits of his case. We do not see that such prejudice has resulted in this case. *Joplin* v. *Carrier*, 11 *S. C.*, 329; *State*

*ex relatione Cathcart* v. *Columbia*, 12 *Id.*, 393; *Bouknight* v. *Brown*, 16 *Id.*, 166.

The exceptions 3, 4, and 5 complain that on the merits a case for alimony was not made out; that, in truth, instead of the defendant deserting the plaintiff, she deserted him. That was a question of fact, and, after reading the testimony carefully, we cannot say that the decision was unsupported by the evidence. Three grounds were alleged for alimony, viz., adultery, cruelty, and desertion; and if either of them was sustained by the proof, we cannot say that the decree was wrong. It is insisted that adultery on the part of the husband is not good ground for alimony. In States where divorces are authorized it is certain that adultery is generally given as one of the grounds, if not the principal ground, for granting it; but if as argued infidelity to the marriage vows alone is not sufficient ground for alimony, there is no doubt whatever that cruelty is, and will justify the wife in withdrawing from the presence of her husband and claiming against him a decree for alimony. "In pursuance of the decisions and the practice of the ecclesiastical and consistorial courts of England, in South Carolina alimony is granted for bodily injury inflicted or threatened and impending, amounting to the *saevitia* of the civil law, which may be defined to be personal violence actually inflicted or menaced, and affecting life or health." *Hair* v. *Hair*, 10 *Rich. Eq.*, 173. And to this may be added as constituting *saevitia* of another kind: When the husband has not actually inflicted any bodily injury, yet practises such obscene and revolting indecencies in the family circle that a modest and pure-minded woman would find these grievances more intolerable to be borne than the most cruel afflictions upon her person.

There is in this case some conflict in the testimony, but, taking it all together, we think there was a preponderance of evidence of such *saevitia* of both kinds as to warrant the decree for alimony. In general terms it appeared with reasonable certainty that the parties had not lived happily together and there had been some differences on former occasions; but in March, 1873, when they were boarding with their son-in-law, Mr. L. D. Goore, in the "Thornwell House" in Yorkville, the final separation took

place.   The plaintiff gave her account of the particulars of that occasion, in which, for the most part, she was corroborated by Mr. and Mrs. Goore.   She said: "On the occasion of my separation from defendant he came to our boarding house late in the evening; he entered our bedroom and I went in after him; when I said good evening, he said 'Go to ——.'   I asked him if he would have his supper; he replied, 'Go to —— with your supper.'   After this he kept continually cursing and abusing me for an hour or more.   He then advanced toward me in a striking attitude.   When I attempted to escape from the room through the door, he caught hold of the door with his left hand and struck me with his right fist in the side, when I sunk down in a chair and screamed.   Mr. L. D. Goore then pushed open the door while defendant was still holding it.   I then left the room. When defendant struck me he said, 'You are a —— ungrateful wretch.'   *   *   He left me on the occasion of separation before stated without making any kind of arrangement for my place of residence or subsistence, and has made none since to my knowledge.   During the ten years since our separation I have received only fifty-five dollars from defendant—received through my son and daughter," &c.   The defendant left the house immediately, and when in the act of leaving Mr. Goore invited him to return; he replied with an oath that he would not, saying significantly, "This winds up the show—this is my last trip."   According to this account it would seem that the defendant deserted the plaintiff.   But if it were as alleged, and the plaintiff, after such conduct on the part of the husband, had left his house, it would not have been legal desertion, and we do not see that the judge erred in so deciding.

Exception 3 complains that the Circuit Judge decreed that the defendant should pay alimony, although he had offered *bona fide* in his answer as well as at other times previously to take back his wife and treat her as a husband ought to treat a wife.   It was not satisfactorily proved that he had ever made such an offer in plain and unequivocal terms.   Sometimes he talked that way and at other times and repeatedly he said that he would never again live with his wife.   Even the invitation in his answer was certainly very perfunctory, evidently made under pressure and in

limited and guarded terms.   He says that he has "at all times been willing to provide plaintiff a home in his residence and to support and maintain her in such comfort as his condition and circumstances will justify," &c.

It does not strike us that the rule, which declares that an offer to take back should condone all past offences, is fully satisfied by a cold, formal proposition to give the wife of his youth and the mother of his children *merely house room* and supplies sufficient to appease hunger and support animal life.   The heart of a true wife craves and is entitled to something more than that.   As we understand it, the invitation back which the rule contemplates is a cordial overture by the husband to return to the bosom of his family, and there, as its head, to discharge her household duties and to be cherished and supported as a wife should be, and be treated with respect and conjugal love and tenderness.   The invitation of Mr. Briggs after all that had occurred, after frequently declaring that he would never again live with the plaintiff, and especially in view of the fact that he was then living in adultery with a woman of bad character, was too apparently a mere affectation; and it is not at all surprising that the wife declined it as a hollow mockery of her rights as his wedded wife, the mother of his children, and the rightful mistress of his house and heart.   We cannot say that in this respect the judge erred in decreeing alimony.

The obligations of the marriage relation continue only during the joint lives of the parties, and of course the charge must cease at the time the defendant died.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, with qualification as to time herein stated.